556 So.2d 1062 (1990)
Joseph D. VITTITOE
v.
STATE of Mississippi.
No. 07-58050.
Supreme Court of Mississippi, En Banc.
February 7, 1990.
*1063 Charles E. Webster, Twiford & Webster, Clarksdale, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice Jan. 3, 1989, Mike C. Moore, Atty. Gen., DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:
Our law provides that the trial judge must advise one wishing to plead guilty to a criminal offense of the minimum mandatory penalty provided by law for the charge at issue. This appeal presents the question whether compliance with that rule is a requisite to a valid and enforceable plea of guilty.
The question is presented by Joseph D. Vittitoe who on May 31, 1983, in the Circuit Court of Coahoma County, Mississippi, entered a plea of guilty to a charge of armed robbery. Upon his plea the Court adjudged Vittitoe guilty and sentenced him to a term of twenty-five years imprisonment. Vittitoe has applied for post-conviction relief, Miss. Code Ann. § 99-39-5(1)(f) (Supp. 1989) and states that, when he entered his plea,
I was expecting the court to be lenient since I was a first offender and with no prior criminal record, and I was expecting probation or shock probation of maybe one or two years.
Mississippi law requires a minimum sentence of three years upon conviction of the crime of armed robbery. Miss. Code Ann. § 97-3-79 (Miss. 1989); see Malone v. State, 486 So.2d 367, 369 (Miss. 1986) ("three years imprisonment is the most lenient lawful sentence for armed robbery").
At his post-conviction hearing Vittitoe testified that, had he known of this fact, he would not have pleaded guilty.
Q. Were you aware at the time you entered the guilty plea of the mandatory three-year sentence that accompanies the charge of armed robbery?
A. No, sir.
Q. If you had been aware of that mandatory term of three years, would that have affected your decision in whether or not you pled guilty?
A. Yes, sir.
Q. And, what effect, if any, would it have had?
A. I would not have made the plea of guilty, and I would have exercised my constitutional right to be tried before a jury of my peers.
We may not here invoke our common experience that persons in custody and seeking post-conviction relief often present quite fanciful views of the facts, for nothing in the record suggests Vittitoe's testimony is devoid of candor.
Before a person may plead guilty to a felony he must be informed of his rights, the nature and consequences of the act he contemplates, and any other relevant facts and circumstances, and, thereafter, voluntarily enter the plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The question necessarily involves issues of fact. Sanders v. State, 440 So.2d 278, 283 (Miss. 1983). Over the years the law has provided a number of criteria' for judging charges of involuntariness, such as the quality of the advice of counsel, Leatherwood v. State, 539 So.2d 1378, 1388 (Miss. 1989).
Rule 3.03, Miss.Unif.Crim.R.Cir.Ct. Prac. (1979, as amended), supplies such a benchmark. That rule provides, in relevant part, as follows:
(3) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the *1064 defendant personally and to inquire and determine:
* * * * * *
B. That the accused understands the nature and consequences of his plea, and the maximum and minimum penalties provided by law; ... .
In the face of Vittitoe's charge that he had not been advised of the mandatory three-year minimum sentence, the Circuit Court made the following statement:
BY THE COURT:
All right, sir. The Court does not argue with that, and for the record the Court will make a finding at this time that the movant was not advised of the minimum sentence he could receive, and he was not advised that he would serve his sentence without probation or parole for ten years. That is, by the Court itself.
BY MR. WEBSTER: [Counsel for Vittitoe]
I understand that to be a finding of fact by the Court, those two items?
BY THE COURT:
That is correct.
A canvas of state law authority reveals no fewer than two dozen cases holding that guilty pleas made with ignorance of a minimum or mandatory minimum sentence are unenforceable.[1] Representative of these cases is Perez v. State, 449 So.2d 407 (Fla. App. 1984), which states:
In particular, the record reflects that the defendant was not advised ... on the possible minimum mandatory penalties which could be imposed. Such advice is necessary in order that a guilty or nolo contendere plea may be intelligently and voluntarily entered. See State v. Wilson, 395 So.2d 520 (Fla. 1981).
449 So.2d at 408.
In this circumstance, many state courts presume that the omission resulted in prejudice to the accused; that is, he would not have pled guilty if he had known of the mandatory minimum sentence. See, e.g., People v. Evans, 132 Mich. App. 239, 347 N.W.2d 28, 29 (1984) ("failure to inform a defendant of a mandatory minimum sentence requires reversal"). The case of State v. Hazel, 275 S.C. 392, 271 S.E.2d 602, 603 (1980) is illustrative of this approach:
It is elementary that in order for a defendant to knowingly and voluntarily plead guilty, he must have a full understanding of the consequences of his plea... Upon the facts of this case, appellant's plea was not knowing because it was entered without an understanding of the mandatory punishment for the offense to which she was pleading.
Most of these cases recognize that any claim of prejudice may be rebutted by evidence that the defense counsel informed the accused of any mandatory minimum penalty, Underwood v. State, 214 Kan. 633, 522 P.2d 457, 458 (1974), or that the accused was apprised of the range of penalties at a prior hearing. People v. Ray, 130 Ill. App.3d 362, 84 Ill.Dec. 167, 170, 471 N.E.2d 933, 936 (1984).
*1065 Here we have no need of resort to presumptions. Without contradiction the Circuit Court did not advise Vittitoe of the mandatory minimum sentence, nor is there evidence that he knew of it from any other source. What we have is a first offender who says he did not know of the three-year mandatory minimum and nothing in the way of rebuttal. In the case before the Court today, the Circuit Court reviewing the plea found as a fact that, when accepting Vittitoe's guilty plea, it did not inform him of the mandatory minimum sentence. Additionally, however, when reviewing Vittitoe's motion to withdraw his plea, the Court found as a fact that Vittitoe was indeed ignorant of the mandatory minimum sentence at the time he pled guilty.
The Circuit Court nevertheless held "the failure to inform movant of the minimum sentence before or after the time of the entrance of his guilty plea does not rise to the level of a constitutional violation ..." It is true that the voluntariness rule is of constitutional origins, Boykin v. Alabama, supra, but this hardly suggests that all criteria for voluntariness must similarly be of constitutional proportions. Rule 3.03 is a valid rule of law, emanating from a governmental source empowered to enforce it. That Rule 3.03 may not be of constitutional status hardly renders it less enforceable. It is one of this state's important expressions of what an accused should know before he waives trial and pleads guilty. It forms the context for our consideration whether Vittitoe's plea of guilty was freely and voluntarily given. See Coleman v. State, 483 So.2d 680 (Miss. 1986); Sanders v. State, 440 So.2d 278 (Miss. 1983); Rogers v. State, 243 Miss. 219, 136 So.2d 331 (1962).
We consider only the plea process. Cf. Leatherwood v. State, 539 So.2d 1378, 1384-85 (Miss. 1989). Whether Vittitoe may have been found guilty had he gone to trial and what sentence may thereupon have been imposed are matters legally beyond our ken. Because Vittitoe was ignorant of the mandatory minimum sentence for the charge to which he was pleading and stated that he would not have pled had he known this information, it cannot be said that his plea was "voluntarily and intelligently made." This being the case, Vittitoe may of right withdraw his plea of guilty, enter a plea of not guilty and be given a trial.
In sum, we hold that Vittitoe has established that he was not advised of the minimum penalty as required by Rule 3.03(3)(B). This fact is established as a matter of law by more than a mere preponderance of the evidence. See McClendon v. State, 539 So.2d 1375, 1378 (Miss. 1989); Leatherwood v. State, 539 So.2d 1378, 1381 n. 4 (Miss. 1989). The Circuit Court's failure to observe the rule's mandate at the plea hearing renders Vittitoe's plea involuntary as a matter of law. The Circuit Court erred in the proceedings below when it refused to vacate Vittitoe's plea of guilty. We reverse the judgment below, restore Vittitoe's plea of not guilty to the indictment for armed robbery, and remand for such further proceedings as may be appropriate.
DENIAL OF MOTION TO SET ASIDE GUILTY PLEAS REVERSED, RENDERED AND REMANDED.
PRATHER, SULLIVAN, ANDERSON and BLASS, JJ., concur.
HAWKINS, P.J., dissents with separate written opinion, joined by ROY NOBLE LEE, C.J., and DAN M. LEE, P.J.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
In U.S. v. Smith, 440 F.2d 521, 528-529 (7th Cir.1971), the Court said:
Every inroad on the concept of finality undermines confidences in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern *1066 that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.
Also, quoted with approval in United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634, 639 (1979).[1]
A post-conviction proceeding to set aside a guilty plea should be reviewed with the utmost gravity. This matter is not before us upon a direct appeal, but a collateral attack. The polestar inquiry should be: was there a miscarriage of justice in the accused pleading guilty?
In deference, it seems to me many courts miss the forest for the trees, looking solely to technical guidance from some rule deemed infallible and therefore inflexible for any type of unforeseen situation.
An examination of a guilty plea should not ignore a basic ingredient of the human character.
What is involved in a plea of guilty to a serious felony? It is standing in a public place before a somber judge and acknowledging to the whole world (friends, family, associates and acquaintances) that you have committed a morally reprehensible act.
I cannot imagine anything more difficult for a rational person than to plead guilty in open court to a serious crime, if he is in fact innocent. Indeed, it poses an almost insuperable burden upon a guilty person to plead guilty. I daresay I am well within the mark in stating that there is not a lawyer who has defended at least five felonies who has not witnessed this phenomenon. It is a common anecdote of criminal defense attorneys to have a case in which the proof of guilt is overwhelming, staggering, and yet their client adamantly refuses to plead guilty. The accused all too frequently refuses, to the chagrin of his attorney and to his own later regret, a lenient bargain offered by the overburdened prosecution. The decision to plead guilty is not the same, as some would have it, as standing at the roulette table or shooting dice.
Therefore, in examining guilty pleas a court should be satisfied that there was no coercion or threats inducing the plea, but it need have only minimal concern about warning against making a guilty plea.
In the absence of a mentally defective person, there are only two questions which need be asked as to a guilty plea:
(1) Did the accused know what he was doing?
(2) Did he do it voluntarily?
This is all that is required of Boykin v. Alabama, 395 U.S. 238, 241, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274, 278, 280 (1969), and should be the emanating spirit guiding the application of Rule 3.03 of the Rules of Criminal Procedure (RCP) in a post-conviction relief petition. No Constitutional right is implicated in this case.
Put conversely, the inquiry should be whether there was anything done by the trial court which would have induced the petitioner to plead guilty.
Rule 3.03(2) embodying the above criteria provides:
(2) Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception or improper inducements. A showing that the plea of guilty was voluntary and intelligently made must appear in the record.
The requirements of the above paragraph are of course absolute, and a violation of its provisions would clearly be prejudicial to a defendant.
Rule 3.03(3) states:
(3) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is *1067 the duty of the trial court to address the defendant personally and inquire and determine:
A. That the accused is competent to understand the nature of the charge against him;
B. That the accused understands the nature and consequences of his plea, and the maximum and minimum penalties provided by law;
C. That the accused understands that by pleading guilty he waives his constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, the right against self-incrimination;
D. If the accused is not represented by counsel, that he is aware of his right to counsel at every stage of the proceeding and that one will be appointed to represent him if he is indigent.
I would respectfully suggest that it does not necessarily follow that a technical failure to follow a provision of Rule 3.03(3) constitutes a violation of Rule 3.03(2). And, a reviewing court should still inquire whether Rule 3.03(2) has been satisfied in a guilty plea. The majority, however, has adopted a per se rule and holds that following a purely technical violation of Rule 3.03(3) there need be no inquiry as to whether Rule 3.03(2) was nevertheless satisfied. Or put another way, the majority is holding that there is no way in which Rule 3.03(2) can be satisfied in the absence of showing complete technical compliance with Rule 3.03(3).
Thus the majority tells us: "Here we have no need to resort to presumptions (of prejudice). Without contradiction the Circuit Court did not advise Vittitoe of the mandatory minimum sentence, nor is there evidence that he knew of it from any other source." (Majority Opinion, p. 1065)
And again: "The Circuit Court's failure to observe the rule's mandate at the plea hearing renders Vittitoe's plea involuntary as a matter of law." (Majority Opinion, p. 1065)
We have never adopted a per se rule, e.g., Womble v. State, 466 So.2d 910 (Miss. 1985), holding a mere technical violation of Rule 3.03 does not invalidate a guilty plea. Nor has the United States Supreme Court or the Fifth Circuit Court of Appeals, Timmreck, supra; Keel v. United States, 585 F.2d 110 (1978).
In Timmreck the district judge, in accepting a guilty plea on a drug offense, failed to inform the accused of a mandatory special parole term of at least three years. Thereafter, he sentenced the defendant to ten years imprisonment plus a special parole term of five years. This failure was a violation of Rule 11 of the Federal Rules of Criminal Procedure (FRCP). The Supreme Court quoted from its previous decision in Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417, that in order to justify setting aside such a conviction, it must be a "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Thus, failure to comply with technical requirements of Rule 11, FRCP alone does not warrant post-conviction collateral attack. As made clear in Timmreck, Hill and Keel, a lot more than a non-compliance with Rule 11 must appear to rise to constitutional dimensions. The majority does not contend any constitutional right of Vittitoe's was violated.
That there can be a prejudice resulting from a failure to inform an accused of the statutory sentencing boundaries I have no doubt. For example, in this case had the circuit judge failed to inform Vittitoe that he could be sentenced to any term less than his entire life, and Vittitoe, expecting something like a ten-year sentence got twenty-five years instead, we would have a different matter.
Or, if the circuit judge had sentenced Vittitoe to three years imprisonment after failing to inform him that three years was the minimum sentence authorized, and Vittitoe was petitioning the court to set aside that sentence, we would be presented with an entirely different matter. No one is naive enough to think, however, Vittitoe would be petitioning any court to set aside *1068 a three-year sentence. Not on this record.[2]
This is the trouble with the majority's rationale. It assumes that because there could be prejudice, there must be prejudice. Thus the per se condemnation. The majority engages in name dropping of authorities giving us a litany of cases which upon examination have only a passing acquaintance with the issue in this case, and a tangential relevance at best.
Taking as an example its two banner cases, quoted in the body of the majority opinion, Perez v. State, 449 So.2d 407 (Fla. App. 1984), and State v. Hazel, 275 S.C. 392, 271 S.E.2d 602 (1980), we find no support for the majority's contention. In Perez the trial court attempted to question the accused, a foreigner who could not speak English, without an interpreter as to the voluntariness of his plea, and among other things failed to inform him of the minimum statutory sentence. The opinion does not give the minimum statutory sentence authorized or the sentenced pronounced by the trial court. In Hazel the trial judge failed to inform the accused that upon a plea of guilty a life sentence was mandatory.
In my view adopting a per se rule of setting aside guilty pleas in a post-conviction collateral attack for non-compliance with Rule 3.03 is unnecessary and creates a potential for harm to the administration of criminal justice. I would respectfully suggest that Chief Judge Clark in Keel, supra, 585 F.2d at 116, gives the appropriate procedure to guide courts in proceedings as this. In Keel the district judge had erroneously informed Keel that the maximum punishment was 45 years, when in fact it was only 25 years. Although the court found that Rule 11 of the Federal criminal rules had been violated, it nevertheless held this was insufficient to set aside the conviction. In concurring, Judge Clark suggested a two-step procedure, first that the petitioner had the burden of proving a non-compliance with Rule 11, but that upon his doing so it was incumbent upon the government to then show that "the dereliction was not likely to have been a material factor affecting the petitioner's decision to plead guilty." [Emphasis added]
Under this test, Vittitoe flunked.
I have made an appendix of the circuit judge's questioning of Vittitoe before accepting his plea of guilty. There is no question but that it is thorough, and meets Rule 3.03(2). It is voluntary, and based upon facts. Furthermore, the circuit judge informed Vittitoe of the maximum sentence authorized.
According to the presentence report, Vittitoe and another person at gunpoint robbed a "Charter Food Store," with Vittitoe pulling the gun. Vittitoe was captured with the gun a short while later hiding beneath a trailer. (R. 72)
Vittitoe and David Allen Bryant were indicted July 1, 1983. The court appointed Tom T. Ross, Jr., to represent Vittitoe, who pleaded not guilty on arraignment. On July 21 the court held a hearing on Vittitoe's desire to change his plea to guilty (see, Appendix). On August 17, 1983, the court conducted a sentencing hearing and sentenced Vittitoe to twenty-five years imprisonment. On November 9, 1984, fifteen months later, Vittitoe executed a petition for post-conviction relief.
It is clear the circuit judge did not inform Vittitoe at either the July 21 or August 17, 1983, hearings that armed robbery carried a minimum sentence of three years. The record shows this, the circuit judge so stated.
It is not without dispute, however, that Vittitoe was never told this. He testified he was not told the minimum sentence by Ross, or that he would not be paroled under an armed robbery conviction.
Ross's testimony was quite the contrary. Ross at first questioned the court as to the propriety of his testifying on this matter because of the attorney-client relationship at the time. The court took a recess, and following research, informed Ross that ethically he was not bound to refrain from testifying because his former client had positively testified that Ross never told him the minimum sentence on armed robbery.
*1069 Ross testified there had been no plea bargain discussions with the State or recommendations from the State. Ross further testified he remembered having numerous conversations with Vittitoe, and was sure he told him of the maximum penalty of any period up to Vittitoe's life expectancy, that he would not be eligible for parole for a ten-year period, or whatever period he was sentenced to under ten years. Ross had no specific recollection of the conversation in which he advised Vittitoe of this, "However, once again I would say I am positive that, there's not a doubt in my mind that I did advise him of that."
Ross's certainty that he had given this advice was predicated on the fact that he advised all his clients fully on possible sentencing.
It is therefore a matter of dispute whether Ross did in fact fully inform Vittitoe as to the minimum sentence. Vittitoe testified he did not, Ross testified he did.
Vittitoe does not claim Ross made any misrepresentation.
We are therefore left with the following conjectures:
(1) Ross said nothing to Vittitoe and Vittitoe was, as he testified, "expecting probation or shock probation of maybe one or two years," and, as he again testified, if he had been told the minimum sentence, "I would have exercised my constitutional right to be tried before a jury of my peers."
(2) Ross said nothing to Vittitoe about the minimum sentence, but even if he had told Vittitoe armed robbery carried a mandatory three-year sentence without parole, Vittitoe would nevertheless have pleaded guilty.
(3) Ross did tell Vittitoe of the minimum sentence, which had nothing to do with his decision to plead guilty.
Was Vittitoe indeed expecting probation or at the most shock probation of one-to-two years, and if he had been told armed robbery carried a minimum sentence of three years without parole, he would have pleaded not guilty?
The unknown "x" in this question can be determined quite easily.
Let us go back to the time prior to July 21, 1983, when Vittitoe was sitting in the Coahoma County jail. Let us also assume that he is expecting "probation or shock probation of maybe one or two years," or otherwise he will elect "to be tried before a jury of my peers," as he testified. This is something in which he has a deep and abiding interest. His entire future is involved. "Shock probation" is the vernacular for a special form of sentencing, known only to lawyers, law enforcement officials, and those who have had it explained to them. Miss. Code Ann. § 47-7-47 (Ch. 435, Supp. 1983). This would have had to be explained to him by somebody in order for Vittitoe to know anything at all about it.
With his whole future at stake, Vittitoe in at least one  probably most  of those numerous conversations he had with Ross would have asked about his chances on sentencing. That is the most natural thing in the world.
If Ross had lied to him, the first thing Vittitoe would have alleged in his petition for relief would have been the misrepresentation as to his possible punishment.
Vittitoe's petition never alleged Ross misrepresented anything to him. His complaint was that Ross never told him anything about the minimum sentence.
If Ross indeed did not tell him, it is clear Vittitoe entertained no hope whatever of something less than three years, or he would have been asking Ross about his chances. Far more likely, Ross did tell him and it made no difference because Vittitoe knew he was guilty and was going to receive a substantial penitentiary sentence.
We may be confident from the uncontradicted testimony that Ross talked with Vittitoe upon numerous occasions prior to his entering a guilty plea. We may also be confident from the uncontradicted testimony that Vittitoe never once told Ross, his lawyer: "I am expecting either probation or shock probation for a period of not over one-to-two years, and if I don't stand a *1070 chance of this, I want a trial before a jury of my peers."
We can therefore dismiss Vittitoe's claim that he was not told and would never have pleaded guilty if he had known the minimum sentence.
It defies human nature that Vittitoe would have entertained a remote hope, much less be expecting such a sentence, and not once mention it to his lawyer.
The majority states it has no reason to doubt Vittitoe's candor. (Majority Opinion, p. 1063) In my view the majority will have to divest itself of common sense to accept Vittitoe's claim.
In summary, in my view the majority errs in adopting a per se rule to set aside a guilty plea for a purely technical non-compliance with Rule 3.03. And, while the majority does not claim Vittitoe showed he was in fact harmed by the failure of the circuit judge to inform him the minimum sentence for armed robbery, I have answered that as well. He was not.
ROY NOBLE LEE, C.J., and DAN M. LEE, P.J., join this opinion.

APPENDIX

TRANSCRIPT OF PROCEEDINGS
This the 21st day of July, 1983, came on for consideration the entry of the plea of guilty to the charge in the indictment by the Defendant, JOSEPH D. VITTITOE; the Defendant, having been arraigned and entered a plea of not guilty on an earlier day during the present term of court and the Defendant being present at this in open court along with his attorney, HON. TOM ROSS, JR. of Clarksdale, Mississippi.
WHEREUPON, the Court conducted the following investigation, to-wit:
BY THE COURT:
Court calls case number 6708, State of Mississippi versus Joseph D. Vittitoe, Mr. Vittitoe is charged by indictment with the crime of "Armed Robbery." He was arraigned on this charge to which he entered a plea of not guilty. His case is scheduled for trial before this Court.
Mr. Ross, do you have an announcement to make in this case?
BY MR. ROSS:
Yes, sir. After discussing this matter with my client, he informs me that he wishes to withdraw his previously entered plea of not guilty and enter a plea of guilty to this charge in cause number 6708.
BY THE COURT:
Mr. Vittitoe, you have heard the statement of your attorney, Mr. Ross, that you wish to enter a plea of guilty to the crime of armed robbery in case number 6708. Is that your wish?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Before I can accept your plea of guilty, it is necessary that I determine if your plea of guilty is knowingly, understandingly, freely, and voluntarily made. In order to make this determination, I will ask you a series of questions. If you wish to decline to answer any of these questions, you may do so. However, you will be under oath and if you do answer the question, your answer may be used against you. Your lawyer is here with you and if you want to consult with your lawyer about any questions I ask you, you are at liberty to do so. Do you understand what I am saying?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Please raise your right hand.
(DEFENDANT SWORN)
BY THE COURT:
Are you at the present time under the influence of any drugs or intoxicants?
BY THE DEFENDANT:
No, sir.
BY THE COURT:
Do you understand that at this time and in this proceeding that I am seeking to determine if your plea of guilty is knowingly, understandingly, freely, and voluntarily made, in order to decide if I will *1071 accept your plea of guilty. Do you understand that?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Mr. Vittitoe, how old are you?
BY THE DEFENDANT:
Nineteen.
BY THE COURT:
What education have you had Mr. Vittitoe?
BY THE DEFENDANT:
Tenth grade.
BY THE COURT:
What type of work or business experience have you had?
BY THE DEFENDANT:
Landscaping and painting.
BY THE COURT:
Do you understand that in this case, Mr. Vittitoe, that you are charged with the crime of Armed Robbery?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
I am going to ask Mr. Wynne, the Assistant District Attorney, to give the substance of the charge against you and I want you to listen to him.
BY MR. WYNNE:
The Defendant within the jurisdiction of this Court on May 31, 1983, did wilfully, unlawfully, and feloniously commit assault upon Eugene Hudson by the exhibit of a deadly weapon and with the wilful, unlawful and felonious intent to steal, the Defendant, Joseph D. Vittitoe did then and there wilfully, unlawfully and feloniously take, steal and carry away from the person and against the will of the said Eugene Hudson certain personal property, to-wit: money, the property of Bennett Stockwell, d/b/a Charter Marketing Co.
BY THE COURT:
Mr. Vittitoe, do you understand the charges against you?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Did you commit this crime?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Mr. Wynne, does the State have any recommendation it desires to make as to the sentence to be imposed on this plea of guilty?
BY THE STATE:
No.
BY THE COURT:
Mr. Vittitoe, you have heard the statement of the Assistant District Attorney, Mr. Wynne, that his office has no recommendation to make in this case and that if you do enter a plea of guilty the Court may impose the sentence in the discretion of this court to whatever it thinks to be proper that would be less than the life imprisonment. You do understand that the Court is not bound by the recommendation of the District Attorney's office but the Court will determine what your sentence will be?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Knowing these things, do you still wish to enter a plea of guilty?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
If you did not enter a plea of guilty and had a trial and were convicted and sentenced you would have a right to appeal to the Supreme Court. But upon entering a plea of guilty you waive or give up this right. Do you understand that?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Has anyone threatened you in order to get you to plead guilty?
*1072 BY THE DEFENDANT:
No, sir.
BY THE COURT:
Has anyone promised you anything in order to get you to plead guilty?
BY THE DEFENDANT:
No, sir.
BY THE COURT:
Has your attorney or any other officer of this court made any threats or promises to you in your case?
BY THE DEFENDANT:
No, sir.
BY THE COURT:
Has anyone told you that the Court and that is  that I would be any lighter in imposing sentence on you simply because you entered a plea of guilty?
BY THE DEFENDANT:
No, sir.
BY THE COURT:
Do you understand the consequences of your act in pleading guilty and that is, do you understand that when you plead guilty you are admitting that you did in fact commit the crime stated in the indictment?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Do you realize that you are giving up your right under the Constitution that protects you against self-incrimination?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Do you understand that you are giving up your right to a trial by jury?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Do you understand that if you did not plead guilty you would be entitled to a jury trial and before you could be convicted all twelve of the jurors would have to agree on the verdict of guilty?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
And you understand that you are giving up these rights when you plead guilty?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
You realize that the burden is on the State of Mississippi to prove you guilty beyond a reasonable doubt if you had a trial and that when you enter a plea of guilty you waive or give up this requirement and the State is not required to offer any proof in your case at all?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Under the Constitution you have a right to be confronted by the witnesses against you  what that means is that if you did not plead guilty and had a trial, the State would have to put its witnesses on the stand, under oath, to testify and you and your attorney would be entitled to question or cross-examine those witnesses, but when you enter a plea of guilty you give up your right to be confronted by the witnesses against you and you give up your right to question or cross-examine those witnesses. Do you understand that?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Under the Constitution you would have a right at a trial to take the stand and testify in your own behalf. If you did, you would be subject to cross-examination just like any other witness; however, you would also have the valuable right at a trial not to testify and the fact that you did not testify could not be commented on or used against you in any way. But when you enter a plea of guilty you give up these rights also. Do you understand that?
BY THE DEFENDANT:
Yes, sir.
*1073 BY THE COURT:
Do you realize by entering a plea of guilty you waive or give up any objection you may have to the composition and that is the makeup of the Grand Jury that indicted you and of the trial juries of this county as to race, sex or any other objection that you are giving up these rights also when you plead guilty? Do you understand that?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
From your observation of your client here today, do you see or otherwise observe anything about him that would lead you to believe that he is presently intoxicated or under the influence of any drugs?
BY MR. ROSS:
No, sir.
BY THE COURT:
From your personal conference with your client, do you believe that he fully understands what he is doing at this time in entering a plea of guilty?
BY MR. ROSS:
Yes, sir.
BY THE COURT:
Have you advised him of his Constitutional rights?
BY MR. ROSS:
Yes, sir.
BY THE COURT:
Are you satisfied with the services of your attorney in this case?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Has your attorney threatened you in any manner or promised you anything in order to get you to plead guilty?
BY THE DEFENDANT:
No, sir.
BY THE COURT:
Do you believe your attorney has given you good advice in entering this plea here at this time?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Do you believe that your attorney has properly represented you in your case and at all stages of your case?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
I have attempted to question you thoroughly about your plea of guilty to be satisfied that you are fully acquainted with your rights. Do you still wish to enter a plea of guilty?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
In case number 6708, the Court finds that the plea of guilty of Mr. Joseph D. Vittitoe to the crime of Armed Robbery is intelligently, understandingly, freely, and voluntarily made, and the plea of guilty is hereby accepted.
BY THE COURT:
There will be a presentence investigation and report made. After which, there will be a further hearing at which time sentence will be imposed.
NOTES
[1] Carter v. State, 291 Ala. 83, 277 So.2d 896, 897 (1973); State v. Price, 715 P.2d 1183, 1186 (Alaska App. 1986); State v. Escalante, 148 Ariz. 298, 714 P.2d 468, 471 (App. 1986); McDaniel v. State, 288 Ark. 629, 708 S.W.2d 613, 615 (1986); In re Birch, 10 Cal.3d 314, 110 Cal. Rptr. 212, 216, 515 P.2d 12, 16 (1973); People v. Chippewa, 713 P.2d 1311, 1313-14 (Colo. App. 1985); D'Amico v. Manson, 193 Conn. 144, 476 A.2d 543, 550 (1984); Gaston v. United States, 535 A.2d 893, 896-97 (D.C.App. 1988); Wells v. State, 396 A.2d 161, 162 (Del. 1978); Perez v. State, 449 So.2d 407, 408 (Fla.App. 1984); State v. Williams, 68 Haw. 498, 720 P.2d 1010, 1012 cert. den., 479 U.S. 933, 107 S.Ct. 406, 93 L.Ed.2d 358 (1986); People v. Louderback, 137 Ill. App.3d 432, 91 Ill.Dec. 944, 946, 484 N.E.2d 503, 505 (1985); Jones v. State, 478 N.E.2d 676, 678 (Ind. 1985); State v. Sisco, 169 N.W.2d 542, 547 (Iowa 1969); Noble v. State, 240 Kan. 162, 727 P.2d 473, 476 (1986); People v. Jones, 410 Mich. 407, 301 N.W.2d 822, 824 (1981); State v. Trott, 338 N.W.2d 248, 253 (Minn. 1983); Griffin v. State, 684 S.W.2d 425, 427 (Mo. App. 1984); State v. Cavanaugh, 207 Mont. 237, 673 P.2d 482, 484 (1983); State v. Clark, 217 Neb. 417, 350 N.W.2d 521, 524-25 (1984); White v. State, 99 Nev. 760, 670 P.2d 576, 577 (1983); State v. Regan, 209 N.J. Super. 596, 508 A.2d 1149, 1155 (1986); State v. Montler, 85 N.M. 60, 509 P.2d 252, 253 (1973); Commonwealth v. Reagan, 348 Pa.Super. 589, 502 A.2d 702, 707 (1985); State v. Hazel, 275 S.C. 392, 271 S.E.2d 602, 603 (1980); Ex Parte Smith, 678 S.W.2d 78, 79 (Tex. Crim. App. 1984); State v. Harris, 41 Wash. App. 561, 705 P.2d 280, 282 (1985).
[1] Significantly, in his petition for post-conviction relief, Vittitoe specifically stated that he was not seeking to set aside his plea of guilty, but only to be relieved of a mandatory imprisonment for ten years. And, not once in this entire record did Vittitoe state or even hint that he was innocent.
[2] See Footnote 1.