766 So.2d 830 (2000)
Kenneth TAYLOR a/k/a Kenneth C. Taylor Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-CP-02070-COA.
Court of Appeals of Mississippi.
September 12, 2000.
Kenneth Taylor, Appellant, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Kenneth Taylor appeals pro se from the Lamar County Circuit Court's denial of his petition for post-conviction relief. Taylor asserts that his guilty plea was not entered knowingly and voluntarily due to ineffective assistance of counsel and failure of the trial court to inform him of the minimum mandatory sentence for the *831 charges against him. We disagree and affirm.

FACTS
¶ 2. In 1996, seventeen year old Kenneth Taylor and an accomplice, Robert L. Young, entered Pearson's Pawn and Gift Shop in Purvis and asked Angel Pearson if they could look at a gun. Mrs. Pearson told them they were too young to do so. Taylor then displayed his own weapon and told Mrs. Pearson to give him a pistol and some other merchandise, including gold jewelry. While Taylor was attempting to rob Mrs. Pearson, Young went down the hallway and found Mrs. Pearson's husband, Eddie Pearson, who was with his father in a back room installing shelves. The younger Pearson told Young to return to the front of the store, and a struggle began. Pearson told police that he believed Young was about to pull out a weapon.
¶ 3. When Taylor heard the struggle in the back hallway, he fled with Young close behind him. Eddie Pearson obtained a pistol from his wife and followed the pair, firing some shots. One of those shots hit Taylor in the buttocks. Taylor came upon Christina Murray parking her car and forced her out of the car at gunpoint. He drove the car and picked up Young a short distance away. The two then drove to Lumberton, where they persuaded a friend, Denetha Clark, to give them a ride and abandoned the Murray vehicle.
¶ 4. Taylor was indicted on charges of armed robbery and attempted robbery. The State had evidence against Taylor including the bullet recovered from his buttock, blood in the seat of the Murray car, a bullet hole in his pants and the eyewitness testimony of the Pearsons and Murray. Taylor pled guilty to reduced charges of robbery and attempted robbery. Young was separately charged with attempted robbery and accessory after the fact to robbery. After interrogating Taylor as to his understanding of the meaning and consequences of a guilty plea, the court sentenced Taylor to two consecutive terms, of fifteen years each in the custody of the Mississippi Department of Corrections. By statute he must serve at least eighty-five percent of that sentence before being eligible for parole. Miss.Code Ann. § 47-5-138(4) (Supp.1996).
¶ 5. In his motion for post-conviction relief, Taylor said his attorney misled him as to the time he would actually serve if he pled guilty. Allegedly, his guilty plea was thus involuntary and his counsel ineffective. He appeals from the denial of that motion by the Lamar County Circuit Court.

DISCUSSION
¶ 6. Taylor asserts that his attorney advised him that if he went to trial he would likely be convicted and receive two life sentences, but that if he pled guilty he would serve only about seven years. Taylor states in his appellate brief that his counsel never explained the "eighty-five percent rule" to him, and that the judge inadequately explained it. Taylor says he never would have entered a guilty plea if he had understood he would have to serve more than twenty-five years before he would be eligible for release. In addition, he argues that his attorney was ineffective because he did not investigate the crime and because he failed to raise the issue of Taylor's state of mind as a defense to his actions in stealing Murray's car.
¶ 7. Mississippi's Post-Conviction Relief Act requires that these motions be verified and must contain a concise statement of the grounds upon which the motion is based, a separate statement of the facts within the personal knowledge of the prisoner as well as a specific statement of those facts which are not within the prisoner's personal knowledge. Miss.Code Ann. § 99-39-9 (Supp.1999). If it appears from the face of the motion, any exhibits to it and the prior proceedings that the movant is not entitled to relief, the judge may *832 order dismissal of the motion. Miss.Code Ann. § 99-39-11 (Supp.1999):
Respect for the integrity of the judicial process mandates that we require of such applicants a far more substantial and detailed threshold showing, far in excess of that we deem necessary in the case of a plaintiff in a civil action or, for that matter, in the case of the prosecution in a criminal indictment. In this context we understand Section 99-39-9 suggest(s) a regime of sworn, fact pleadings, based upon personal knowledge.
Neal v. State, 525 So.2d 1279, 1280 (Miss. 1987).
¶ 8. Here the trial court dismissed the motion, finding it insufficient to overcome the evidence in the record that Taylor understood the consequences of his plea and that his counsel was effective. On appeal, we will not reverse a trial court's denial of post conviction relief absent a finding that the trial court's decision was clearly erroneous. Kirksey v. State, 728 So.2d 565, 567 (Miss.1999).

I. Voluntariness of Guilty Plea
¶ 9. In accepting a plea of guilty, the trial court has a duty to address the defendant and to make sure that: (a) the defendant is competent to understand the nature of the charges; (b) that he understands the nature and consequences of the plea as well as the maximum and minimum penalties provided by law; and (c) that he understands that by pleading guilty, he is waiving certain constitutional rights. URCCC 8.04(A)(4).
¶ 10. Perhaps in consideration of Taylor's age at the time (seventeen) and his level of education (eighth grade), the judge at the plea hearing questioned him repeatedly as to whether or not he understood what would happen if he pled guilty. Taylor said he understood and declined numerous opportunities to change his mind. The record shows that the trial judge explained the minimum and maximum sentences for the offenses involved as well as the "eighty-five percent rule."
Q. Now, Kenneth, we were discussing the first part of this hearing about plea bargaining. This District doesn't use plea bargaining, but what normally happens is I'd order a presentence investigation report, a victim impact statement, take your petition and hearing today and those items and sit down and arrive at what I believe to be a fair sentence, and that's the sentence you'd have to serve. That would be exactly what would happen if you went to trial with a jury tomorrow and they found you guilty of count one, count two or both counts. And then I'd arrive, like I told you, at a sentence that I thought was correct. And Mr. McDonald stated that the State's reducing these charges upon your agreement for me not to do that. In other words, you're going to accept the fifteen year sentence on count one and then a fifteen year sentence on count two and they are to run consecutive for a total of thirty years. Do you understand that?
A. Yes, sir.
Q. But by reducing it from armed robbery you don't have to serve the first ten years of each sentence without eligibility for parole. Do you understand that?
A. Yes, sir.
¶ 11. The judge's reference to serving the first ten years of each sentence without eligibility for parole is explaining the statutory requirement that no person convicted of armed robbery is eligible for parole until serving ten years of the sentence. Miss.Code Ann. § 47-7-3 (Supp. 1999). Only after a prisoner has served ten years could he begin to accumulate "earned-time" that could reduce his remaining imprisonment by fifteen percent. Miss.Code Ann. § 47-5-139(1)(e) (Supp. 1999). The plea arrangement was that the prosecutor would remove the firearm element *833 of the charge if Taylor would plead guilty to robbery and attempted robbery. If Taylor were sentenced to thirty years for armed robbery, he would have to serve all of the first twenty years but the remaining ten years could be reduced by fifteen percent. In the alternative, if the court sentenced Taylor to a total of thirty years for robbery and attempted robbery, all thirty years would be subject to the potential fifteen percent reduction. The difference is that he would have to serve 28.5 years for two fifteen-year armed robbery sentences but only 25.5 years under the sentences that he received for robbery and attempted robbery.
¶ 12. What the trial judge meant by the statement that immediately followed those already quoted is unclear:
Q. Now, of course, right now the truth in sentencing is in effect in Mississippi. So unless the legislature changes it you would have to serve eighty-five percent of twenty years before you could be released on post release supervision. Do you understand that?
A. Yes, sir.
¶ 13. We first note that Taylor never refers to this statement either in his pleadings in the trial court nor in his original brief here. Only in the final paper filed in this entire PCR proceeding, his reply brief on appeal, does he even mention that statement by the judge. We will later analyze the effect of that seeming lack of concern for the statement, but in summary, it is difficult to find Taylor was misled by something that he never mentioned until the end of the entire process.
¶ 14. When the trial judge in this quote referred to "eighty-five percent of twenty years" he may still have been explaining the difference between the first twenty years arising from a conviction on two armed robbery counts as opposed to the first twenty years on two simple robbery convictions. The simpler explanation is that he meant to say "thirty" instead of "twenty" years.
¶ 15. Taylor argues that a person pleading guilty must be informed of "his rights, the nature and consequences of the act he contemplates, and any other relevant facts and circumstances, and, thereafter, voluntarily enter the plea." Vittitoe v. State, 556 So.2d 1062, 1063-64 (Miss.1990). In that case, the court found that Vittitoe's guilty plea was involuntary because he was not informed of the three-year minimum sentence for armed robbery before he entered a guilty plea. Id. at 1065.
¶ 16. The only possible defect here is that at one point the trial judge literally said that after serving eighty-five percent of twenty years he could be eligible for release. However, instead of seventeen years, Taylor actually had to serve 25.5 years before release under the present statutory restrictions on early release. The rest of the trial judge's lengthy explanation correctly stated that Taylor would receive two fifteen year sentences, totaling thirty years and not twenty, and he would need to serve eighty-five percent of any sentence. We do not find that a defendant who has pled guilty must be allowed to withdraw his plea just because at one stage during the proceedings the trial judge may either have spoken incorrectly or confusingly. It is the overall clarity of what the court informed the accused that is central. The fulcrum on which the right to withdraw a plea pivots is whether the accused's plea was involuntary, which in this context would mean that due to an incorrect explanation by the court he was misled about the minimum sentence that he actually would have to serve. Id. at 1063-64.
¶ 17. We now turn to Taylor's allegations. In the three different pleadings that he filed in the trial court, he never refers to the court's statement about a twenty year sentence. Never does he say that based on the judge's statement, he thought that he would serve about seventeen years instead of twenty-five. Instead, he argued that his counsel had promised *834 him that he would only have to serve seven years if he accepted the thirty-year sentence. The first trial court pleading was a motion to set aside his sentence. The next was a motion seeking the supreme court's authorization for him to proceed, which was unnecessary since his case had not been previously appealed to that court. See Miss.Code Ann. § 99-39-7 (Rev.1994). A third trial-court filing, which in fact may have been part of one of the previous two, appears largely to be a brief. None referred to this statement.
¶ 18. Taylor also does not mention this statement in his original appellate brief. Only in his reply brief does he finally allude to the statement. There he says that the "trial judge told me I would have to do 85% of 30 years[,] that I had to do 20 years of the 30 year sentence. But [the] trial judge didn't inform me of [the] mandatory minimum sentence I could get for said crime." So even in the reply brief he is not arguing that the reference to "twenty years" was error. If this statement was capable of causing harm, Taylor does not allege it.
¶ 19. The complaint that Taylor does make, that the trial judge never informed him of the mandatory minimum sentence, is specious. The judge told Taylor that he would receive two fifteen year sentences to run consecutively, and that he would have to serve eighty-five percent of the sentence that he received. There was no range of potential sentences herethe court told him precisely what he would be given if he pled guilty. The court also explained the mandatory minimum if Taylor was convicted of armed robberyten years without reduction and eighty-five percent of the remainder. The fact that the trial judge referred to "twenty years" at one point for ambiguous purposes does not invalidate the clarity of the overall explanation during the plea.
¶ 20. Taylor also complains of his lawyer's conduct, namely, the alleged misrepresentation by his counsel that he would only have to serve seven years. In a post-conviction relief case, where the petitioner's pleadings are in direct conflict with the evidence in the transcript of the plea hearing, the motion fails to meet the statutory burden of proof required to establish a prima facie showing. Ford v. State, 708 So.2d 73, 76 (Miss.1998). There was no proof other than Taylor's own statement that his counsel misled him, and the allegation is belied by the record itself in which the court explained that Taylor would have to serve eighty-five percent of his sentence and Taylor responded that he understood that. When the accused's sworn statements at a plea hearing are inconsistent with an affidavit that he files in support of post-conviction petition, a summary dismissal of the petition is justified. Taylor v. State, 682 So.2d 359, 364 (Miss.1996). There was not even an allegation that the trial judge's statement about "twenty years" misled him. We find no error in the dismissal of Taylor's claim that his guilty plea was involuntary.

II. Ineffective Assistance of Counsel
¶ 21. Next Taylor complains that his attorney Thomas Schwartz was ineffective in representing him because he failed to investigate thoroughly the circumstances surrounding the robbery and failed to raise Taylor's mental state as a defense.
¶ 22. At the plea hearing, when the judge asked Taylor if his attorney had done everything he believed he should have done to represent him properly, Taylor said yes, with the exception that Schwartz "should have got me a better plea bargain." The court then explained to Taylor that the court did not define its procedures as plea bargaining per se, but that the district attorney would reduce the charge from armed robbery to robbery if Taylor pled guilty and accepted a fifteen year sentence on each charge. Taylor accepted that and declined the court's repeated offer to let the case go to trial.
¶ 23. Taylor alleged in his motion for post-conviction relief that his attorney *835 coerced him into accepting a plea bargain that was not in his best interest. But when asked by the court whether anyone, specifically Mr. Schwartz, had pressured him into pleading guilty, Taylor responded that he had not. Taylor's allegations now directly contradict his own sworn statements at the plea hearing, documented in the transcript. We conclude as did the trial judge that Taylor was satisfied with his attorney's performance and that no one coerced him into pleading guilty.
¶ 24. Taylor also argues that his attorney raised no defenses for him, in particular, those related to his state of mind at the time he stole the car from Murray. Because Taylor pled guilty, he waived any defenses he might have had to the charges. Anderson v. State, 577 So.2d 390, 391 (Miss.1991) (stating that a valid guilty plea operates as a waiver of all non-jurisdictional rights or defects incident to trial). We find no basis to conclude that a strong and meritorious defense was thereby waived.
¶ 25. The standard for review for claims of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient and (2) that the deficiency prejudiced the defense. "The burden to demonstrate both prongs is on the defendant who faces a strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." Eakes v. State, 665 So.2d 852, 872-73 (Miss.1995). "Only where there is a reasonable probability that without counsel's error the outcome of the trial would have been different will this Court find ineffective representation." Id. at 873.
¶ 26. The circuit court was correct in finding that Taylor had not satisfied even the first prong of this two-prong analysis. He failed to show that his attorney's conduct was deficient; therefore, there was no deficient conduct to cause prejudice to his case. This claim is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY DENYING POST CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.