## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00074-COA

**DIVAN W. DIGGS A/K/A DIVAN WENSLOW DIGGS A/K/A DIVAN DIGGS**                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                          **APPELLEE**

DATE OF JUDGMENT:              02/27/2015
TRIAL JUDGE:                  HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:    RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       DIVAN W. DIGGS (PRO SE)
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              JEFFREY A. KLINGFUSS
NATURE OF THE CASE:           CIVIL - POSTCONVICTION RELIEF
TRIAL COURT DISPOSITION:      DENIED MOTION FOR POSTCONVICTION
                              RELIEF
DISPOSITION:                  AFFIRMED - 05/31/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND ISHEE, JJ.

### ISHEE, J., FOR THE COURT:

¶1. In 2012, Divan Diggs was arrested in Rankin County, Mississippi, for selling a controlled substance within 1,500 feet of a church or within 1,000 feet of the church's real property. Diggs pleaded guilty to the charge in the Rankin County Circuit Court. He was sentenced to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years suspended and ten years to serve, followed by five years of post-release supervision (PRS). Diggs timely filed a motion for postconviction relief (PCR), which was dismissed. Aggrieved, he appeals. Finding no error, we affirm.

# STATEMENT OF FACTS

¶2.　In October 2012, Diggs was contacted by an acquaintance and asked to return cathinone tablets that Diggs had previously purchased from the acquaintance's boyfriend. Unbeknownst to Diggs, the acquaintance was acting as a confidential informant (CI) to local authorities.　Nonetheless, Diggs agreed to return the tablets in exchange for money.

¶3.　That night, Diggs met the acquaintance at a gas station across the street from a church. The tablets were exchanged for cash.　Immediately following the exchange, officers surrounded Diggs and arrested him.　Diggs was charged with selling a controlled substance within a close proximity to a church.

¶4.　On August 7, 2013, Diggs pleaded guilty to the charge in the circuit court.　He was sentenced to thirty years in the custody of the MDOC, with twenty years suspended, ten years to serve, and five years of PRS.　On appeal, Diggs asserts that his plea was not voluntarily given, his counsel was constitutionally ineffective, and the use of the CI constituted entrapment.

# DISCUSSION

¶5.　The denial of a PCR motion will not be reversed "absent a finding that the [circuit] court's decision was clearly erroneous." *Smith v. State,* 806 So. 2d 1148, 1150 (¶3) (Miss. Ct. App. 2002).　Additionally, "[t]he burden of proving that a guilty plea was involuntary is on the defendant and must be proven by a preponderance of the evidence." *Walton v. State*, 16 So. 3d 66, 70 (¶8) (Miss. Ct. App. 2009) (quoting *House v. State,* 754 So. 2d 1147, 1152 (¶24) (Miss. 1999)).　Furthermore, it has long been held that in order for a defendant

2

to prevail on an ineffective-assistance-of-counsel claim, he must "show by a preponderance of the evidence (1) that counsel's performance was deficient, and (2) but for the deficiencies, the trial court outcome would have been different." *Jones v. State*, 976 So. 2d 407, 410-11 (¶6) (Miss. Ct. App. 2008) (quoting *Ward v. State*, 914 So. 2d 332, 336 (¶12) (Miss. Ct. App. 2005)). Moreover, under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial." Finally, "[a] presumption exists that the attorney's conduct was adequate." *Hull v. State*, 983 So. 2d 331, 333-34 (¶11) (Miss. Ct. App. 2007) (citing *Burns v. State*, 813 So. 2d 668, 673 (¶14) (Miss. 2001)).

¶6.     Diggs's assertion that his guilty plea was not voluntarily given is intertwined with his assertion that he received constitutionally ineffective assistance of counsel. He argues that his attorney essentially forced him to plead guilty by advising him that he could be sentenced to more than thirty years if he did not accept the State's plea bargain. The record reflects that the circuit court asked Diggs at the plea hearing if he understood that he was facing a maximum of sixty years for the charge against him, to which Diggs responded that he did, in fact, recognize the maximum penalty as sixty years. As such, Diggs's attorney was correct in asserting that Diggs could be sentenced to far more than the State's offer of thirty years if he did not plead guilty.

¶7.     Diggs was asked a litany of questions by the circuit court judge at the plea hearing, including whether Diggs was satisfied with his counsel's performance. Diggs responded that he was satisfied with the services rendered by his attorney and had no complaints against

3

him. Diggs was also told the factual basis upon which the State would move to convict him if he proceeded to trial. Diggs stated that he did not disagree with the factual basis. He acknowledged the consequences of pleading guilty, including the possibility of being convicted as a habitual offender if he were to break the law again. With regard to Diggs voluntarily offering his guilty plea, the following dialogue ensued:

> The Court: Has anyone made any promises of leniency or anything of that nature in an effort to get you to change your plea?
>
> Diggs: No, your Honor.
>
> The Court: After discussions with your attorney, are you the one that decided to plead guilty?
>
> Diggs: Yes, your Honor, I am.
>
> The Court: Are you telling me then that you're freely and voluntarily admitting your guilt to this crime?
>
> Diggs: Yes, I am, your Honor.
>
> The Court: Are you pleading guilty because you are guilty and for no other reason?
>
> Diggs: Yes, your Honor, I am.
>
> The Court: Do you understand that I'm not bound by any recommendation the State may make as to the sentence, and instead, I could impose the maximum sentence authorized by law?
>
> Diggs: I do understand, your Honor.
>
> The Court: And knowing that, do you still wish to go forward with your plea?
>
> Diggs: Yes, your Honor.
>
> . . . .

The Court:  Do you understand if I accept your plea of guilty that you will not have a right to appeal this conviction?

Diggs:  Yes, your Honor.

The Court:  You're being represented by Mr. Sellers. Are you satisfied with his representation?

Diggs:  I am, your Honor.

The Court:  Have you got any complaints you wish to make about your attorney?

Diggs:  No sir, your Honor.

The Court:  Have you got any questions about your rights or any questions about the crime that you're offering to plead guilty to?

Diggs:  No, your Honor.

 . . . .

The Court:  [I]s [the recommendation the State just read aloud] the recommendation that you expected to hear, Mr. Diggs?

Diggs:  Yes, sir.

. . . .

The Court:  Alright. Mr. Diggs, it's not too late at this point to stop this hearing and proceed to trial, but it will be once I accept your plea of guilty. So before I do that, I need to make certain that this is what you want to do. Do you want to plead guilty?

Diggs:  Yes sir, I do.

The Court:  Do you have any questions about anything?

Diggs:  No sir, I don't.

The Court:  How do you plead to the crime of sale of cathinone within 1,500 feet of a church as charged[,] . . . guilty or not guilty?

5

Diggs: Guilty.

At that point, the circuit court accepted Diggs's guilty plea and sentenced him as recommended by the State and pursuant to the plea agreement.

¶8. In *Taylor v. State*, 766 So. 2d 830, 834-35 (¶23) (Miss. Ct. App. 2000), we reviewed a similar argument to the one at hand. Therein, we stated:

> Taylor alleged in his [PCR motion] that his attorney coerced him into accepting a plea bargain that was not in his best interest. But when asked by the court whether anyone, specifically [his attorney], had pressured him into pleading guilty, Taylor responded that he had not. Taylor's allegations now directly contradict his own sworn statements at the plea hearing, documented in the transcript. We conclude[,] as did the trial judge[,] that Taylor was satisfied with his attorney's performance and that no one coerced him into pleading guilty.

*Id*. As seen in *Taylor*, Diggs did not indicate any dissatisfaction with his counsel or reservation about entering a guilty plea during his plea hearing. If Diggs was unhappy with his counsel's performance or wished to acknowledge additional facts regarding his case, he was charged with doing so during the plea hearing, which he did not.

¶9. It is only through Diggs's bare assertions in his PCR motion and his appeal that we see him question the voluntariness of his guilty plea and reference his dissatisfaction with his attorney. However, it is well settled that, "[i]n cases involving postconviction collateral relief, where a party offers only his affidavit, . . . his ineffective[-]assistance[-]of[-]counsel claim is without merit." *Willis v. State*, 17 So. 3d 1162, 1166 (¶12) (Miss. Ct. App. 2009) (quoting *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995)). Based on the foregoing, we find that Diggs's claims regarding the voluntariness of his guilty plea and ineffective assistance of counsel are without merit.

6

¶10. We now move to Diggs's argument that the circumstances surrounding his arrest constituted entrapment. It has long been held that the entrance of a voluntary guilty plea waives any defense a movant may have had to a charge, "including the defense of entrapment." *Campbell v. State*, 878 So. 2d 227, 229 (¶7) (Miss. Ct. App. 2004) (citation omitted). As such, Diggs's claims regarding entrapment and the circumstances of his arrest were waived, and we are estopped from considering them now on appeal.

¶11. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**