# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KP-00220-SCT

*HENRY LEE SIMPSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/28/93 |
| TRIAL JUDGE: | HON. HOWARD Q. DAVIS, JR. |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HENRY LEE SIMPSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 7/25/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/15/96 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Henry Lee Simpson filed a motion for post-conviction relief in the Circuit Court of Sunflower County which was denied by the lower court. Aggrieved, Simpson appeals to this Court claiming the following errors: ineffective assistance by his counsel, Cleve McDowell; that the lower court failed to advise him of the maximum and minimum sentences; that the State failed to comply with the "real plea bargain"; and that he was improperly subjected to double jeopardy because of the inclusion of the charge of conspiracy with the capital murder.

¶2. Only the failure to advise of the maximum and minimum sentences warrants discussion. We find the record belies Simpson's claim. He was fully advised of the nature of the charges against him and the consequences of his two pleas of guilty. A sentence of life was the only sentence that the trial court could have imposed upon Simpson's entry of a plea of guilty to capital murder. There is no minimum sentence for the crime of conspiracy, therefore, there was no reason for the judge to so advise. Finding no merit to any of Simpson's issues, we affirm.

## STATEMENT OF FACTS

¶3. On August 7, 1990, Henry Lee Simpson, June Letea Glover, Marvin Jerome Webb, Steven Lee Price, and Cedric Porter murdered Lewie K. Shields while they were engaged in the commission of an armed robbery. Simpson was indicted along with the others on November 20, 1990, for the crimes of capital murder and conspiracy. Simpson pled guilty to both charges on Janurary 16, 1991. The prosecutor announced:

> Your Honor, the State understands that this defendant wishes to withdraw his previously entered pleas of not guilty to Count #1 of this indictment which is that of Capital Murder and Count #2 which is conspiracy and Armed Robbery and enter pleas to those two charges at this time. The State will have a recommendation as to sentence and I can state that for the record at this time, as to Capital Murder, the State would recommend that this defendant be sentenced to serve a term of his natural life in the custody of the Mississippi Department of Corrections for the charge of capital murder. For Count #2, conspiracy, the State would recommend that this defendant be sentenced to serve a term of five years in the custody of the Mississippi Department of Corrections; that sentence to run consecutive to the sentence imposed in Count #1 of this indictment. All of these sentences to run consecutive to any sentence this defendant is currently serving. I believe his probation was just recently revoked in another charge. Your Honor, the State would make these recommendations conditioned upon the defendant's truthful testimony against other co-defendant's involved with this crime and the State would ask that the Court continue this cause for sentencing until such time as that testimony is complete.

¶4. Simpson responded that he wanted to change his pleas to guilty. He advised the court that he was twenty years of age and had completed the eleventh grade in school. Simpson stated that he was not under the influence of drugs or alcohol and understood what he was doing. He had discussed the pleas with counsel, and was satisfied with counsel's representation. He admitted that he understood by pleading guilty he gave up the right to be tried by a jury. He knew that he had the right to confront and cross-examine witnesses against him, the right to call witnesses in his behalf, the right to testify or refrain, and the right to appeal if convicted. Simpson stated that he was acting of his own free will and that no one had threatened, coerced or intimidated him to plead guilty. He stated that, aside from the State's announced recommendation, no one had promised him a lighter sentence or held out any reward in order to gain his guilty plea. He knew that sentencing would be withheld pending completion of his testimony against his co-indictees. Simpson also answered affirmatively when asked by the trial judge the following question:

> Do you understand that the sentence which the State has recommended that [I] impose at such time that I impose sentence is the maximum sentence which the Court alone can give you and the jury would have the right to give you additional sentence if you were tried. But, I cannot give you any additional sentence other than what has been recommended today?

¶5. The prosecutor recited the facts that the State could prove against Simpson and his co-indictees. Simpson agreed that the facts were basically correct and that it was to those charges of capital murder and conspiracy to which he was, of his own free will, entering pleas of guilty. Thereafter, the court accepted Simpson's pleas and suspended imposition of sentence until the co-indictees' cases had been resolved.

¶6. On September 20, 1991, at the sentencing hearing, Simpson stated that he understood his guilty

pleas entered on January 16, 1991, and the deferral of sentencing by the court. At sentencing, Simpson understood that his co-indictees' cases had been resolved. Simpson responded "No" when asked if he had anything to say prior to the court imposing sentence. The prosecutor again recited the State's recommendation which was identical to the recommendation stated at the entry of the guilty pleas on January 16, 1991. Sentences of life for the capital murder and five years consecutive for conspiracy were then imposed in accordance with the State's recommendation.

¶7. On January 28, 1993, Simpson filed in the lower court his motion to vacate and set aside his conviction which was denied. This appeal followed.

## DISCUSSION OF LAW

### WHETHER THE LOWER COURT ERRED IN DENYING SIMPSON'S CLAIM THAT HIS GUILTY PLEAS WERE INVOLUNTARILY ENTERED?

¶8. Simpson contends that his guilty pleas were involuntary as a matter of law because his right against self incrimination as required by ***Boykin v. Alabama***, 395 U.S. 238 (1969) was violated. Simpson attacks the voluntariness of the guilty pleas on several grounds, of which only the failure to advise of the maximum and minimum sentences is worthy of discussion. The remainder are devoid of merit.

¶9. Simpson's claims are co-mingled, confusing and contradictory. First, Simpson states in his brief: "Furthermore, a close examination of the record shows that the trial court correctly advised the Appellant of the maximum penalty that the court could impose for the crime of Capital Murder, however, the [sic] failed completely to advise the Appellant of the maximum, or minimum, penalty provided by law for the crime of Conspiracy."

¶10. Then, in apparent contradiction, Simpson states that the trial court failed to advise him of the penalties for the crimes that he was charged. This language, of course, contemplates that Simpson is in fact challenging the trial court's supposed failure to properly advise him of the penalties for both murder and conspiracy. Simpson alleges that the "real deal" was that:

Appellant had an understanding from his attorney at this point that he would not receive a life sentence because he was willing to testify against the other defendants. Had Appellant's attorney investigated this plea agreement, and had he followed up on the plea agreement as he should have, the Appellant would not have plead guilty in exchange for a life sentence, but would have insisted on going to trial.

This attempt by Simpson to show prejudice is feeble indeed. He fails to show how an investigation of "this plea agreement" by his counsel would have yielded anything that would have impacted his decision to plead guilty.

¶11. The record, in fact, belies Simpson's contentions. The trial court informed Simpson that the State's recommendation, which was life for the capital murder and five years for the conspiracy, "is the maximum sentence which the Court alone can give you . . . A jury would have the right to give you [sic] additional sentence if you were tried. But I cannot give you any additional sentence other than what has been recommended today?" Obviously, **a life sentence was the only sentence** that the

trial judge could impose upon Simpson for his plea of guilty to capital murder, and Simpson was so advised.

¶12. Simpson next complains that the trial court failed to advise him of the minimum sentence for conspiracy. While it is true that the trial judge did not specifically advise Simpson of a minimum sentence for conspiracy, there was a valid reason for not doing so. There is no minimum sentence for conspiracy. Miss. Code Ann. § 97-1-1(h) (1972), as amended, states *inter alia* that the defendant "may be punished by a fine of not more than five thousand dollars (5,000.00) or by imprisonment for not more than five (5) years, or by both." Certainly there was no mandatory minimum, as in ***Vittitoe v. State***, 556 So. 2d 1062 (Miss. 1990). Thus, there was no reason for the trial judge to state any minimum sentence for conspiracy.

¶13. This record absolutely demonstrates that Simpson was fully advised of the nature of the charges against him and of the consequences of his two guilty pleas. He was not coerced, intimidated or promised any reward beyond the district attorney's announced recommendation for sentence. The recommendation was first announced on January 16, 1991, at Simpson's entry of guilty pleas and again at sentencing on September 20, 1991. The trial judge honored the district attorney's recommendation and sentenced Simpson accordingly. Simpson does not allege that he expected a lesser sentence than the one imposed. He clearly had "expectation and reliance" upon receiving the exact sentence pronounced by the trial judge. From the very onset, Simpson knew and understood what the recommendation would be and he could not have expected any lesser sentence.

¶14. Even if the statute carried a minimum sentence about which Simpson was entitled to be advised, there would still be problems for him to overcome. Automatic invalidation of a guilty plea is not the rule in Mississippi. ***Smith v. State***, 636 So. 2d 1220, 1226 (Miss. 1994) (plurality opinion), *citing* ***Gaskin v. State***, 618 So. 2d 103, 108 (Miss. 1993); ***Sykes v. State***, 624 So. 2d 500 (Miss. 1993). The ***Sykes*** Court applied the harmless error analysis by holding that where it can be said "beyond a reasonable doubt that the failure to advise an accused of a minimum played no role in the decision of the accused to plead, such failure is not fatal to the sentence." ***Sykes*** at 503. *See also* ***Smith,*** 636 So. 2d at 1226. This Court in ***Smith*** stated:

> The transcript of his hearing shows affirmatively that Smith was fully apprised, and understood the consequences, of the sentence which the State intended to recommend to the court, and which was imposed by the court.

> Accordingly, this Court holds that the lower court's ruling denying Smith's motion to set aside and vacate the pleas and convictions was proper and no evidentiary hearing was required.

***Smith***, 636 So. 2d at 1228. Here, as in ***Sykes***, it is clear beyond a reasonable doubt that any failure to advise Simpson of a minimum sentence played no role in his decision to plead guilty. His prior plea and transcript contradict his current affidavit.

¶15. The lower court had Simpson's original plea colloquy sworn to under oath. As noted, the record belies Simpson's claims. An evidentiary hearing is not required in such cases. This Court, in ***Harris v. State***, 578 So. 2d 617, 620 (Miss. 1991), stated:

> In order for a contested fact to require an evidentiary hearing it must be material. Moreover,

*where* an affidavit is belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary, to the extent that the court can conclude that the affidavit is a sham, no hearing is required. (emphasis added).

Simpson's claims are so totally contradicted by the record on its face so as to render his current affidavit a "sham." Additionally, a trial judge may rely heavily on previous statements made under oath. *Smith v. State*, 636 So. 2d 1220, 1224 (Miss. 1994). In *Smith*, the Court stated:

In contrast, Smith's current contentions and credibility are certainly suspect. When we compare his previous sworn testimony during his guilty plea with his current affidavit, the latter is practically rendered a "sham," thus allowing the summary dismissal of the petition to stand."

*Smith*, 636 So. 2d at 1224.

¶16. The Court has also noted the emphasis which trial judges place upon a defendant's prior representations under oath during guilty pleas. In *Mowdy v. State*, 638 So. 2d 738 (Miss. 1994), the Court stated:

There should be a strong presumption of validity of anyone's statement under oath. However, we are now faced with one statement or the other not being the truth. . ." "Where the petitioner's version is belied by previous sworn testimony, for example, as to render his affidavit a sham we will allow summary judgment to stand." If ever there was a sham, it is clearly within these allegations through which Mowdy and Scrivner attempt to get this Court to order an evidentiary hearing to set aside validly imposed sentences based upon what they both now claim were involuntary pleas.

*Mowdy*, 638 So. 2d at 743. Without further dwelling on this issue, the same can be said about Simpson's current claims now before this Court. Simpson was twice advised in open court, in separate hearings, held six months apart, of the State's recommendation for sentence. On both occasions, although offered an opportunity, Simpson declined to speak. Here, as in *Smith* and *Mowdy*, the lower court clearly relied upon the prior plea transcript and record in denying Simpson's requested relief, to which the judge was certainly entitled under the circumstances of this case.

¶17. Simpson pled guilty to avoid a possible death sentence by a jury. His current affidavit alleging ineffective assistance of counsel falls far short of the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984). Simpson complains that he was to be given "considerably less than the other defendants with parole within a reasonable period of time." The record reveals, that with the exception of Webb, Simpson has failed to show that the other defendants were sentenced to extremely reduced sentences as compared to Simpson. The record also reflects that the prosecutor, in making the State's recommendation for Webb's sentence, stated that Webb was involved in the murder and conspiracy to a lesser extent than others. The trial judge noted in the court's order denying Simpson relief that "the others may not have had prior convictions." Finally, the record reflects that Simpson and Webb, co-indictees under Cause Number, 90-10,191, were called up and sentenced at the same time. Surely Simpson would have broken his code of silence and told the trial judge of the alleged "real deal" immediately upon hearing Webb's lesser sentence. Unless of course, the "real deal," in fact, did not exist.

¶18. It is clear that Simpson's allegation that his guilty plea was "induced by misrepresentations of his attorney" was rebutted by the transcript of the plea hearing, and thus, such claim could be summarily denied without a hearing. *Harveston v. State*, 597 So. 2d 641, 642-43 (Miss. 1992). It flies in the face of reason that Simpson, twice given the opportunity to inform the lower court of the "real plea bargain," when the State announced its recommendation of sentence, choose instead to remain silent. Even more astonishing was his remaining silent upon hearing Webb's sentence. In *Houston v. State*, 461 So. 2d 720 (Miss. 1984), *citing Sanders v. State* 440 So. 2d 278, 284 (Miss. 1983), this Court stated:

> The thoroughness with which Sanders was interrogated by the Circuit Court at the time the plea was tendered may well be the most important evidence of all. For, without regard to the advice or instructions Sanders may have been given by his attorneys, the Circuit Court's questioning of Sanders and explanations to him of his rights and of the consequences of his plea *may* (we emphasize, *may*) have been sufficient to render the plea voluntary without regard to anything else. *Id.* at 288.

> Houston's contention that he entered his plea of guilty on the firm representation by his counsel of a lenient sentence dissolves before the light of the transcript which reveals that the trial judge told Houston that life imprisonment was the only sentence that could be imposed in his case.

*Houston*, 461 So. 2d at 723.

¶19. As in *Houston*, Simpson's allegations that he entered his plea of guilty on the firm representation by his counsel of a lenient sentence, "dissolves before the light of the transcript" which reveals that not only was Simpson advised by the judge that a sentence of life imprisonment was the only sentence that could be imposed in this case, but that Simpson choose not to speak up under circumstances which would apparently have demanded that he do so. There is no merit to this issue.

## CONCLUSION

¶20. The record reflects that Simpson was fully advised of the nature of the charges against him and the consequences of his pleas of guilty. He was not coerced, intimidated or promised any reward beyond the twice announced recommendation by the State for sentence. He was sentenced in accordance to statute by the trial court to life for the capital murder and a consecutive term of five years for the conspiracy. The trial judge was correct to rely upon the record and transcript of the previous plea colloquy and sentencing hearing. A sentence of life was the only sentence that the trial court could impose upon Simpson's entry of a plea of guilty. There is no minimum sentence for conspiracy, thus no reason for the trial court to so advise. Based on the record and prior transcript Simpson's sentences were exactly what he expected to receive and had relied upon. There is no merit to any of Simpson's claims and we affirm the lower court.

¶21. **DENIAL OF POST-CONVICTION RELIEF AFFIRMED**.

**LEE, C.J., PRATHER, P.J., PITTMAN, McRAE, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**BANKS, JUSTICE, DISSENTING:**

¶22. Because I believe that the majority misinterprets the record, I dissent.

¶23. Relying on harmless error analysis is not proper here. The State filed no answer to Simpson's post-conviction motion. In other words, the State never denied any of Simpson's allegations. Miss. Code Ann. § 99-39-13 (1972) states that:

> The answer shall respond to all of the allegations of the motion and shall assert affirmative defenses as the state may deem appropriate.

This was not done in this case. At this stage of the proceedings, we are required to accept Simpson's assertions supported by affidavit which are not belied by the record. ***Harris v. State***, 624 So. 2d 100 (Miss. 1993).

¶24. Simpson contends that he did not have knowledge as to the nature and consequences of his plea. Simpson claims that the trial court never advised him of the maximum and minimum penalties provided by law. The trial court informed Simpson of his right to trial and the rights that go along with it. The trial court asked Simpson whether anyone promised him anything in the way of a lighter sentence, and Simpson answered negatively. Simpson claims that his attorney told him that he would receive a lesser sentence than his co-indictees, if he entered a guilty plea and testified against his co-indictees. Simpson also claims that after the plea hearing he asked his counsel why the State had recommended a life sentence, and that his counsel told him that his sentence would be reduced at the actual sentencing hearing. After he was sentenced to life, Simpson states that he asked his counsel what happened to the agreement. To which his counsel told him that his testimony was not needed against the co-indictees and therefore the agreement did not bind the court.

¶25. Nowhere in the record is it shown that Simpson was aware of the minimum sentence he faced. The trial court told him that the most he could receive for the murder charge was life. The trial court failed to inform him that this was also the minimum penalty that could have been given Simpson. If Simpson was aware that life was the minimum sentence, then his claim of the alleged plea agreement would not be well taken. If the court finds that Simpson was not aware of the minimum sentence available, then his claim may be well taken. The ultimate issue here is whether the record supports a summary dismissal without a hearing. While it may be true that Simpson has been properly informed, I do not believe that such a determination is supported by this record. An evidentiary hearing should have been held to determine if Simpson was informed as to the minimum sentence. ***Washington v. State***, 620 So. 2d 966 (Miss. 1993); *see also **Alexander v. State***, 605 So. 2d 1170 (Miss. 1992); ***Horton v. State***, 584 So. 2d (Miss. 1991).

¶26. The majority states that a life sentence is obviously the only sentence that Simpson could receive. It is of course obvious to all who are well versed on the law. Our sentencing procedures allow no presumption that criminal defendants are well versed. We require an affirmation showing that the defendant is made aware of maximum and minimum sentences as a part of the determination whether a plea is made knowingly and intelligently. Unif. Crim. R. Cir. Ct. Prac. 3.03.

¶27. Finally, the majority states that it is astonishing that Simpson remained silent while hearing Webb's sentence. The record does not reflect that Simpson had any opportunity to object at that time. The record shows that Webb was sentenced immediately after Simpson was sentenced. There is no indication, however, that Simpson was still in the courtroom. The trial court stated that Simpson sought post-conviction relief once he found out that others received better deals. To the extent that the majority relies upon Simpson's silence at Webb's sentencing, an evidentiary hearing is required to demonstrate that Simpson was present and had an opportunity to speak.

**SULLIVAN, P.J., JOINS THIS OPINION.**