THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A

# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00429-SCT

*MARTIN LEDEZMA*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/96 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIM WILSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 10/2/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/23/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Martin Ledezma was indicted in Lauderdale County for possession of more than one kilogram of marijuana with intent to deliver, occurring on January 25, 1994. Ledezma is a Mexican citizen who grew up in Mexico but has lived in Texas off and on for twenty four years between deportations. The circuit court determined that Ledezma was an illegal alien, and that the Immigration and Naturalization Service had a warrant out for his arrest with the intent to deport him again. Ledezma claims that his only language is Spanish and that he does not speak or understand English. He entered a plea of guilty on June 1, 1995, without the benefit of a translator, and was sentenced to serve fifteen years and pay a $10,000 fine with court costs by Circuit Court Judge Larry E. Roberts.

On January 24, 1996, Ledezma filed his Motion for Post Conviction Relief, alleging that he did not understand English and was therefore unable to enter a knowing and voluntary guilty plea. Included

with his PCR motion were several affidavits from Ledezma's friends and cellmates stating that Ledezma understands and speaks little English, has had very little education, and usually needs a translator. On March 21, 1996, after reviewing the motion, files, transcripts, and correspondence, Judge Roberts entered an order denying Ledezma's PCR motion without an evidentiary hearing. The judge set out findings of fact in which he concluded that Ledezma "exhibited a working knowledge and understanding of the English language by speaking in complete sentences and by providing adequate explanations and responses to the questions posed by the Court." Aggrieved of the lower court's ruling, Ledezma perfected his appeal to this Court.

## STATEMENT OF THE LAW

### I.

### MAY A MOTION FOR POST CONVICTION RELIEF BE DENIED WITHOUT AN EVIDENTIARY HEARING WHERE THE MOTION CONTAINS ALLEGATIONS OF MATERIAL FACTS WHICH CONFLICT WITH THE TRANSCRIPT OF THE MOVANT'S GUILTY PLEA?

Ledezma argues that the trial court erred in denying his PCR motion without an evidentiary hearing. "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified." Miss. Code Ann. § 99-39-11(2). Even if the trial judge does not dismiss the motion, he may decide that an evidentiary hearing is not required. Miss. Code Ann. § 99-39-19. This Court has previously stated:

> We adhere to the principle that a post-conviction collateral relief petition which meets basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. . . . We have analogized the court's position when faced with a petition meeting pleading requirements with that of a court in a civil procedure considering a motion for summary judgment. There is a distinction however. Our Post-Conviction Collateral Relief Act provides a procedure limited in nature to review those matters which, in practical reality, could not or should not have been raised at trial or on direct appeal. Miss. Code Ann. § 99-39-11 provides that the trial court judge shall examine not only the motion, but also files, records, transcripts, and correspondence relating to the judgment under attack as well as prior proceedings in the case to determine whether movant is entitled to relief.

*Turner v. State*, 590 So.2d 871, 874-75 (Miss. 1991) (internal citations omitted).

Ledezma points to this Court's decision in *Summerville v. State*, 667 So.2d 14 (Miss. 1996), to support his position that he is entitled to an evidentiary hearing. In *Summerville*, this Court stated that an evidentiary hearing is required when there is a material conflict of fact and the petitioner has met the pleading requirements of Mississippi's Post-Conviction Collateral Relief Act. *Summerville*, 667 So.2d at 15 (citations omitted). He also points to *Sanders v. State*, 440 So.2d 278 (Miss. 1983), in which this Court held that an evidentiary hearing should be held unless "it is manifest that the person whom, or on whose behalf it is presented, is not entitled to any relief." *Sanders*, 440 So.2d at 284. The question of the voluntariness of a guilty plea is a question of fact. *Id*. at 288. Ledezma

argues that a material conflict of fact exists between his motion and the transcript from his plea hearing on the issue of the knowingness and voluntariness of his plea. He claims that because he is unable to understand English, he did not understand his plea petition or plea hearing. Ledezma asserts that he would be entitled to relief if given a chance to prove his claim in an evidentiary hearing.

The State responds by pointing to the plea transcript which reveals that Ledezma appropriately answered questions asked of him by the court. The State argues that Ledezma exhibited a working understanding of the English language and stated that he understood the questions asked by the court. The State also points to the fact that Ledezma has lived in the United States for the past twenty four years. Where the plea transcript demonstrates that the petitioner's claim is patently without merit, no evidentiary hearing is necessary. *Roland v. State*, 666 So.2d 747, 751 (Miss. 1995) ; *Harveston v. State*, 597 So.2d 641, 642-43 (Miss. 1992). Here, the State argues, the plea transcript clearly shows that Ledezma may have had some difficulty speaking English, but could definitely understand it well enough to make a knowing and voluntary guilty plea.

Ledezma responds by citing *Baker v. State*, 358 So.2d 401 (Miss. 1978), in which this Court stated "[T]here should not be a per se rule prohibiting collateral attack on a plea in all circumstances, simply because the transcript on its face reflects recitation of voluntariness and awareness of the consequence." *Baker*, 358 So.2d at 403 (citing *Blackledge v. Allison*, 431 U.S. 63 (1977). "On the other hand, we are mindful, as stated in *Blackledge*, that 'Solemn declarations in open court carry a strong presumption of verity.'" *Id*.

The plea transcript reveals that Ledezma was obviously having difficulty communicating with the judge. Judge Roberts himself noted during the plea hearing and the sentencing hearing that Ledezma was having difficulty with the English language. When the judge asked Ledezma about his name, the following exchange took place:

Q. All right. Martin, is your full name Martin Ledezma, is that your full name?

A. Yes.

Q. Do you have a middle name? No?

A. No.

Q. Can you speak--can you speak English?

A. A little bit.

Q. A little? If there is anything you don't understand stop me and ask me, or ask your attorney and let him communicate to me if there is anything you don't understand, all right?

A. My full name is Martin Ledezma Rodriguez. I never use the Rodriguez.

Q. Okay. What was your last name?

A. Rodriguez.

Q. Spell that for me? Can you spell your last name?

A. Not Rodriguez, Ledezma I can, but not Rodriguez.

Q. What name--do you have a birth certificate?

A. Yes.

Q. Do you know what name is on your birth certificate?

A. Martin Ledezma--Martin Ledezma Rodriguez.

Q. Okay.

BY MR. MITCHELL: Judge, I think I might have a driver license here but it says--

BY THE COURT: Andy, is there--does he have a--a three name--three word name?

BY MR. SUMRALL: He does, Your Honor, but everything in--in the United States is under Ledezma. Even, his social security name is under Ledezma. His Mexican name was Rodriguez but he can write the Rodriguez. That's what he is writing now.

Although the trouble may simply have resulted from the differences occuring in the translation of his name, the fact that the court had this much difficulty in determining Ledezma's name is clear evidence that there was a communication problem at the plea hearing. If the trial judge found it challenging to elicit such simple information from Ledezma, he could not be certain that Ledezma understood something as complicated as his legal rights.

Other than stating his name and how long he had lived in Texas, Ledezma answered few questions in full sentences, relying instead merely on "yes" and "no" answers. Further evidence of Ledezma's limited understanding of English was shown in the following exchange:

Q. Martin, do you understand that you do not have to plead guilty?

A. I'm guilty.

Q. Sir?

A. I'm guilty.

Q. But do you understand you don't have to plead guilty if you don't want to?

A. I want to.

Q. I know you told me you want to but you do not have to if you don't want to?

A. I'm guilty.

The judge was never able to clearly communicate with Ledezma the difference between being guilty, wanting to plead guilty, and not having to plead guilty.

While Ledezma's attorney at the plea hearing may have been correct in concluding that Ledezma understood more English than he could speak, a factual dispute certainly exists as to whether

Ledezma understood enough English to knowingly and voluntarily waive his rights and enter a guilty plea. This factual dispute is especially emphasized in the multiple affidavits presented by Ledezma asserting that he needs a translator to communicate in English. The fact that Ledezma says he has lived in Texas for twenty four years does not mean that he has a firm grasp of the English language. The circuit court determined that Ledezma had no more than a fourth grade education and was deported repeatedly. Also considering the large population of Texans who speak only Spanish, Ledezma's stay there does not equate to an understanding of the English language. Ledezma is at least entitled to an evidentiary hearing to determine if his difficulty with the English language interfered with his ability to enter a knowing and voluntary guilty plea.

## CONCLUSION

The trial transcript reveals that Ledezma answered the judge's questions about his understanding of his guilty plea and the rights he waived as a result of pleading guilty. However, the transcript also clearly shows the difficulty that Ledezma had in communicating in English. Ledezma is entitled to an evidentiary hearing to determine whether his language difficulties interfered with his ability to enter a knowing and voluntary guilty plea.

**REVERSED AND REMANDED.**

**PRATHER, P.J., PITTMAN, BANKS, McRAE AND MILLS, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND ROBERTS, J.**

**SMITH, JUSTICE, DISSENTING:**

The majority reverses and remands Ledezma's case and now requires the trial judge to conduct a hearing to determine whether the defendant's supposed language difficulties interfered with his ability to enter a knowing and voluntary guilty plea. This same trial judge has already observed Ledezma, questioned him extensively concerning his guilty plea, and heard his responses at both the guilty plea hearing and at the sentencing hearing. The trial judge was convinced and so found that Ledezma understood the English language sufficiently to enter a voluntary plea of guilty to the charge of possession with intent to deliver more than ten kilos of marijuana. The trial court is always in a better position than this Court in determining such factual issues.

Although he had lived in Texas for almost twenty-four years, Ledezma remains an illegal alien with an outstanding warrant for his arrest existing at the time of these proceedings before the trial court. Ledezma now claims to only speak Spanish and also maintains that he cannot speak or understand English. The time to have made such a claim was at the time he decided to plead guilty, or if in fact he could not speak or understand English, he should have told the trial judge at that time. In my view this late claim before this Court is highly suspect. I am compelled to dissent.

In my view, the plea transcript and the fact finding by the trial judge clearly indicate that, while

Ledezma may have had some difficultly speaking English, he definitely understood the facts and circumstances of his plea well enough to make the plea a knowing and voluntary guilty plea. The plea transcript more than adequately demonstrates the futility of Ledezma's argument in trying to convince the same circuit judge who took his guilty plea that his plea was involuntary. Summary judgment is appropriate under such circumstances. *Roland v. State*, 666 So. 2d 747, 751 (Miss. 1995); *Harveston v. State*, 597 So. 2d 641, 642-43 (Miss. 1992).

In the case at bar Ledzma answered all questions asked of him by the trial judge. He stated that he understood the questions asked of him. Ledzma exhibited a working knowledge and understanding of the English language by giving complete responses to the trial judge's inquiries.

Examples of Ledemaz's working knowledge of the English language taken exclusively from the transcript of the plea hearing are as follows: "My full name is Martin Ledezma Rodriquez.. I never use the Rodriquez. I've been living in Texas for 24 years. I do not have a green card. I have an embassy card. We not going to sell it, just deliver it." Additionally, at the sentencing hearing, Ledezma told the trial judge that, "I never had any trouble with drugs before. This is my first time." The plea transcript belies the allegation by Ledezma that his plea was rendered involuntary because he could not speak or understand the English language.

Additionally, even considering Ledezma's supporting affidavits filed in this case, the trial judge's ruling remains convincingly correct. Several of the affidavits contain statements that indicate that Ledezma can speak and understand simple English words. The affidavits, in part, state that Ledezma "knows and understands easy words;" that "some words he knows that may not seem difficult;" that he "can understand more the English language than he can speak it;" and that he can "converse with small words."

In fact, at the plea hearing, when asked by the trial judge whether he could speak English, Ledezma responded, "A little bit." Ledezma knew and correctly recited his social security number to the trial judge. He also told the judge that he had discussed his case throughly with his attorney and that he knew and understood all that he had been told by his attorney as well as by the trial judge. He knew that he was only delivering marijuana, not selling it and he knew that the marijuana was hidden "over the door and sides" of the truck in which he and Jose Victor Villarreal were traveling to Atlanta, Georgia when they were apprehended by law enforcement officers in Lauderdale County. More importantly, Ledezma kept telling the judge that he was guilty and that's why he wanted to plead guilty to the charges.

Here, the transcript clearly reveals that Ledzema was informed of all his constitutional rights under both the United States and State of Mississippi Constitutions, the nature and consequences of the act contemplated and relevant facts and circumstances in accordance with this Court's decision in *Vittitoe v. State,* 556 So. 2d 1062, 1063 (Miss. 1990), *(citing Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Ledzema clearly had a working knowledge of the English language having lived and worked in Texas for twenty-four years. The transcript fully supports the trial court's finding and order and this Court should affirm the lower court.

I respectfully dissent.

**LEE, C.J., AND ROBERTS, J., JOIN THIS OPINION.**