IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60782
_____


GEORGE GUY DERDEN, III,

                                        Petitioner-Appellant,

        versus

JAMES V. ANDERSON, SUPERINTENDENT,
MISSISSIPPI STATE PENITENTIARY;
ATTORNEY GENERAL, STATE OF
MISSISSIPPI,                            Respondents-Appellees.


_____

Appeal from the United States District Court for the
            Northern District of Mississippi
                  (1:95-CV-43-D-D)
_____


                    December 24, 1996
Before GARWOOD, DAVIS, and STEWART, Circuit Judges.[*]

GARWOOD, Circuit Judge:

        Appellant George Derden was tried and convicted of an August

1984 attempted armed robbery in the Circuit Court of Lowndes

County, Mississippi, and sentenced to twenty years in prison.  His

conviction and sentence were affirmed on direct appeal to the

Mississippi Supreme Court.  Derden filed a motion for post

conviction relief, which the Mississippi Supreme Court denied.

_____

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Derden then filed the instant petition for writ of habeas corpus in the district court below.  The magistrate judge entered a Report and Recommendation, recommending that Derden's petition be denied.  The district court adopted the magistrate's recommendation as the opinion of the court, denied Derden's objections, and dismissed his petition for habeas corpus relief.  Derden filed a notice of appeal and the district court on December 13, 1995, granted a certificate of probable cause.

## Facts and Proceedings

There was evidence at Derden's trial in February 1988 reflecting the following.

On August 23, 1984, Shirley Pennington and William Edwards——affectionately known as "Good Thing Man"——met with Derden at his home to discuss his plan to rob the El Rancho Motel in Columbus, Mississippi, operated by one William Hall.[1]  The plan called for Pennington and Jessie James Ingram, an accomplice, to approach Hall, who worked the front desk of the motel, and inquire about a room for the night.  Edwards and Will Sherrod, another accomplice, would hide in the backseat of the get-away car with a gun.  Ingram would spray mace into Hall's face, and with Hall

---

[1]    This was not Derden's first attempt at robbing the motel. Derden had initially approached Pennington and Edwards in February 1984 with a plan to rob the motel.  The plan was for Pennington and Edwards to check into the motel, and once inside, cut a hole in the ceiling, go through the attic, jump down on Hall, steal the motel safe, and take the safe back to Derden.  Needless to say, their "Mission Impossible" plan fell through.

temporarily blinded by the mace, the four would retrieve the motel safe and transport it back to Derden.

The following day, the four rode in Pennington's car to the motel as planned.[2]  With Edwards and Sherrod lying in wait inside the car, Pennington and Ingram entered the motel and asked Hall for a room.  As Hall began preparing the paperwork for the room, Ingram sprayed him with mace.  The robbery plan quickly unraveled, however, when Hall (unfazed by the mace) grabbed his gun and started shooting.  As Pennington and Ingram fled to the car, Sherrod began shooting into the motel at Hall.  Edwards had difficulty starting the get-away car, at which point he and Sherrod tried to escape on foot.  Pennington was finally able to start the car and picked up her fleeing cohorts as they were running down the highway.  Although Pennington, Sherrod, and Edwards managed to escape, Ingram was not so fortunate as he was fatally wounded.  A few days after the attempted robbery, Pennington and Edwards were arrested in Alabama and confessed.  Derden was later arrested and charged for his part in the robbery attempt.

Pennington planned to plead guilty to the crime, and as part of her plea bargain, she agreed to assist the government in its prosecution of Derden for attempted armed robbery.[3]  The agreement

---

[2]    In preparation for the heist, Sherrod and Ingram equipped themselves with a supply of stockings and gloves, and managed to finance the gas for the get-away car with money they had acquired by selling meat stolen from the Jitney Jungle.

[3]    The plea agreement was entered into in December 1984.

3

provided that, in exchange for Pennington's testimony against Derden, the government would recommend to the court that Pennington receive a ten-year sentence on a charge of armed robbery. Sometime after entering into the plea agreement, but before Derden's first trial in February 1987, the agreement was modified. According to Pennington's testimony at Derden's first trial, the government agreed to recommend that she receive an eight-year prison sentence instead of the ten-year sentence as originally provided in the agreement. Derden's first trial ended in a mistrial because the jury was deadlocked.

At Derden's second trial in February 1988, Pennington again testified as a key witness for the government. Derden's attorney once again attacked Pennington's credibility by questioning her about her deal with the government:

> "Q: Well, what is the agreement, [Ms. Pennington], that you have now about being sentenced for all these robberies—
> A: —I have an agreement with the State for no more than eight years.
> Q: You have an agreement for no more than eight years?
> A: Right.
> Q: And how long have you had that agreement?
> A: Last year. We made that agreement last year."

On redirect, the prosector introduced a letter which set forth the details of Pennington's plea agreement:

> "Q: Mrs. Pennington, I'm going to hand you what has been marked now as State's in Evidence Number Six and direct you into—to the second page, paragraph labeled one. If you would, read that first sentence there.
> A: 'The State of Mississippi will recommend to the Court that Mrs. Pennington receive a ten-year

4

> sentence with the Mississippi Department of Correction.'
>
> Q: Okay. Now, that has been, as you understand it, reduced to eight years; is that correct?
>
> A: Yes, sir.
>
> Q: Now, other than that *everything else in that particular plea bargain agreement is still in force and effect*; is that correct?
>
> A: It is." (Emphasis added).

This point——that Pennington would spend eight years in prison for armed robbery——was highlighted to the jury in the prosecutor's closing arguments, as evidenced by his statement that "Pennington has not been convicted of anything yet. She will be. And she *will go to the penitentiary*. . . . [She] *is* going to the Department of Corrections for eight years." (Emphasis added).

Derden was convicted of attempted armed robbery and sentenced to serve a mandatory term of twenty years in the Mississippi Department of Corrections. Derden filed a direct appeal with the Mississippi Supreme Court on December 5, 1988. Derden's conviction and sentence were affirmed by the Court in February 1991. *Derden v. State*, 575 So.2d 1003 (Miss.) (unpublished opinion), *cert. denied*, 112 S.Ct. 94 (1991).

On December 8, 1988, ten months after Derden's trial and three days after he had filed his brief with the Mississippi Supreme Court, Pennington signed a plea agreement indicating her intent to plead guilty to armed robbery. The agreement, however, provided that the government would reduce the charge to simple robbery and recommend to the court at sentencing that she not receive a

5

sentence greater than eight years.

At Pennington's arraignment and guilty plea, the court was informed by the government that it had agreed to reduce Pennington's charge from armed robbery to simple robbery, and it recommended that she be sentenced to eight years:

> "State:    If your honor please, prior to doing that, I made a mistake. . . .  The State was to move to reduce this from attempted armed robbery to plain robbery.  That was supposed to have been done prior to the entry of the guilty plea.  The State would so move now to reduce this from a charge of armed robbery to robbery.
>
>            * * *
>
> Court:    Does the State have a recommendation in this case?
>
> State:    Yes, your honor, pursuant to the plea bargain reached between counsel for the defendant and the State of Mississippi, the State would recommend that this defendant be sentenced to serve a term of eight years in the Mississippi Department of Corrections."

The court sentenced Pennington to ten years in prison, but suspended the ten years and sentenced her instead to five years' probation.

Derden later learned of Pennington's probation sentence and filed an application in the Mississippi Supreme Court requesting leave to file a motion for post conviction relief in the Circuit Court of Lowndes County.  Derden argued, *inter alia*, that

Pennington knew when she testified at his trial that the government was going to reduce the charge against her from armed robbery to simple robbery, thus allowing for the possibility of probation, which would not otherwise have been available. Derden maintained that because neither he nor the jury was informed of her "real deal," the jury could not properly assess her credibility, in violation of *Giglio v. United States*, 92 S.Ct. 763 (1972). The Court denied his application, holding that the issues were barred from consideration by Miss. Code Ann. § 99-39-21 of the Mississippi Uniform Post-Conviction Collateral Relief Act and, furthermore, that Derden had failed to present a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27. No explanation for either holding was made.

Derden, proceeding *pro se*, then filed the instant petition for habeas corpus in the district court below, again arguing that Pennington perjured herself with regards to her plea agreement. Without conducting an evidentiary hearing, the magistrate judge recommended that the petition for writ of habeas corpus be denied. Derden filed his objections to the magistrate judge's Report and Recommendation, primarily contesting the magistrate's failure to address his *Giglio* claim. The district court adopted the magistrate's recommendation and denied habeas relief. Derden's requests for a certificate of probable cause and for leave to appeal *in forma pauperis* were granted.

7

**Discussion**

In his appeal to this Court, Derden makes essentially two arguments. First, he contends that he received ineffective assistance of trial and appellate counsel.[4] In support of this argument, Derden points to several alleged deficiencies in counsel's representation, including, *inter alia*: (1) failing to challenge the sufficiency of the evidence on his attempted armed robbery conviction; (2) prohibiting Derden from testifying in his own defense; (3) failing to object to "irrelevant and inflammatory" evidence that the prosecutor presented to the jury, including testimony that Derden purchased a .38 caliber revolver in 1980; testimony that Derden helped make payments on automobiles purchased by two of the people involved in the attempted robbery; testimony referring to Derden as the "Godfather"; and testimony that Derden had been confined in the county jail; and (4) failing to submit proper accomplice instructions. Derden further asserts that this Court, pursuant to *Kyles v. Whitley*, 115 S.Ct. 1555, 1567 (1995), must consider the cumulative effect of all the alleged errors when reviewing his ineffective assistance claims.

We reach the same conclusion regardless of whether we review Derden's ineffective assistance claims cumulatively or "item-by-item"——Derden has not shown that he received ineffective assistance

---

[4] Derden was represented by the same attorney at trial and on direct appeal.

8

of trial or appellate counsel.  Having extensively reviewed the entire record and the briefs, we find no arguable merit in these claims.

Derden's second argument is that Pennington misled the jury when she testified that, in exchange for her testimony against Derden, the state agreed to recommend an eight-year prison sentence for armed robbery when she, in fact, knew at the time that she would receive a significantly lower sentence for the lesser crime of simple robbery.  In response, the state does not, and did not below, in any way address the merits of this claim, but instead simply argues (as it did below) that the claim is procedurally barred.  Similarly, neither the magistrate judge nor the district court addressed the merits of this claim, but simply held it was procedurally barred.

Upon review of the record, we believe Derden has at least made a colorable *prima facie* showing that Pennington might not have been completely honest to the jury when she testified about her arrangement with the government.  Pennington's original agreement was to plead guilty to *armed* robbery with the state agreeing to recommend that she receive not more than a ten-year prison sentence.  When she testified at Derden's second trial, however, the state elicited her testimony that the deal had been changed, but *only* to the extent that they would recommend a sentence for no more than eight, rather than ten, years for armed robbery.  By the

time Pennington pleaded guilty in 1989, however, it appears the state had in fact at some prior time sweetened the deal even more, changing the charge from *armed* robbery, which carries a mandatory minimum sentence of three years, to *simple* robbery, which carries no mandatory minimum sentence and, unlike armed robbery, allows for probation.[5]  And, interestingly enough, probation is what she received.

The state, for reasons unknown, has never addressed Derden's *Giglio* argument.  So far as we can ascertain, the state has never denied Derden's allegation that when Pennington testified at Derden's second trial her deal with the state, as she and the prosecutor then well knew, called for a plea to *simple* robbery (which allowed for probation and carried no minimum sentence), not *armed* robbery (requiring her to serve at least three years in the penitentiary and not allowing probation) as she and the prosecution led the jury to believe.  Nor, so far as we can tell, has the state ever argued that any such deception by Pennington and the prosecutor was not material.  The state has merely argued that this claim is procedurally barred because, as the Mississippi Supreme Court concluded, Derden failed to raise it on direct appeal.  As

---

[5]    Armed robbery under Mississippi law carries a mandatory minimum sentence of three years in the state penitentiary.  *See* Miss. Code Ann. § 97-3-79 (1994); *see also Marshall v. Cabana*, 835 F.2d 1101, 1102-03 (5th Cir. 1988) (per curiam); *Vittitoe v. State*, 556 So.2d 1062, 1063 (Miss. 1990); *Malone v. State*, 486 So.2d 367, 369 (Miss. 1986).  There is no such mandatory minimum sentence for simple robbery.  *See* Miss. Code Ann. § 97-3-75 (1994).

Derden points out, however, (and so far as the record before us reflects) the facts giving rise to this claim were neither known by nor reasonably available to Derden until Pennington pleaded guilty to simple robbery, which occurred after he was tried and convicted and, in fact, even after he filed his direct appeal. If this is the case—and nothing suggests it is not—Derden could not have possibly raised his *Giglio* claim on direct appeal.[6]

Moreover, neither the Mississippi Supreme Court, the magistrate judge, nor the district court below has addressed the merits of Derden's claim. Although the district court conclusorily states otherwise, we are unable to read the magistrate judge's Report and Recommendation——which the district court adopted as its own opinion——as addressing the merits of Derden's *Giglio* claim. Indeed, we doubt that the magistrate judge could have adequately addressed this issue without the benefit of a reply on the merits by the state and a record otherwise more fully developed.

The failure of the government to disclose to a jury material plea-bargaining agreements or negotiations with a key witness may deprive a defendant of constitutional due process. *Giglio*, 92 S.Ct. at 766 (setting aside a conviction because of nondisclosure by the government of its promise to a testifying accomplice that he

---

[6]    We do not preclude the state from showing on remand that Derden knew or was properly chargeable with knowledge of the relevant facts at an earlier time when he could have taken meaningful steps to protect his rights.

11

would not be prosecuted in return for his cooperation).[7] In the first trial, the jury deadlocked. Clearly, Pennington was the star prosecution witness at both of Derden's trials. The prosecution depended significantly on her testimony, particularly her testimony of Derden's direct involvement in the botched robbery attempt of the El Rancho Motel. Therefore, Pennington's credibility was clearly important.

It is certainly arguable that had the jury known of Pennington's reduced charge from armed robbery to simple robbery—thus making her eligible for probation instead of facing a *mandatory* three-year *minimum* sentence for armed robbery—the jury might have given less weight to her testimony. *See, e.g., United States v. Smith*, 480 F.2d 664, 668-69 (5th Cir. 1973) (reversing conviction and remanding for a new trial where government witness testified that he would receive a two-year prison sentence when the agreement actually was for two years of probation). At this juncture, however, we do not address whether Derden was actually

---

[7]    The Court further stated in *Giglio* that:

"when the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the general rule of *Brady*]. . . . Here the Government's case depended almost entirely on [one witness's] testimony. . . . [His] credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." *Giglio*, 92 S.Ct. at 766.

12

prejudiced by the alleged nondisclosure.  We hold only that *on this record* the district court and magistrate judge erred by holding that Derden's facially nonfrivolous *Giglio* claim was procedurally barred, in denying the claim on that basis alone, and in failing to address the merits of the *Giglio* claim.  We do not rule on the merits of the *Giglio* claim; that is for the district court to do in the first instance on the basis of an adequately developed record.

## Conclusion

For the foregoing reasons, the district court's judgment dismissing Derden's petition is affirmed as to all claims except the *Giglio* claim; as to the *Giglio* claim, the judgment is vacated and the cause is remanded for further proceedings not inconsistent herewith.[8]

AFFIRMED in part; VACATED in part; CAUSE REMANDED

---

[8]    Derden's  motion  to  file  a  supplemental  reply  brief  is granted; his motion to supplement the record is granted only to the extent of material filed with or tendered to the district court prior to his notice of appeal, and is otherwise denied.

13